UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 16-163** |
| **TROY KENDRICK JR.** | **SECTION: "H"(3)** |

## ORDER AND REASONS

Before the Court is Defendant Troy Kendrick's Petition for Relief under 28 U.S.C. § 2255 (Doc. 427). For the following reasons, the Petition is **DENIED**.

## BACKGROUND

In September 2018, Defendant Troy Kendrick was found guilty by a jury of conspiracy to distribute and possess with the intent to distribute a quantity of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). He was sentenced to 327 months in prison. Prior to his trial, counsel for Defendant, Bob Glass, filed a Motion to Suppress the Title III wiretap of his phone and the evidence that resulted from that wiretap. The Court denied the Motion and refused to grant an evidentiary hearing.

1

Defendant appealed that ruling, and the Fifth Circuit affirmed it.[1] Defendant now moves to vacate his sentence under 28 U.S.C. § 2255, arguing that his trial counsel was ineffective in failing to fully investigate and properly litigate the Motion to Suppress.

The wiretap application for Defendant's phone, prepared by Special Agent Scott Arseneaux, described two controlled buys and several communications intercepted through a Title III wiretap on co-Defendant Garrick Jones's phone ("the Jones Wiretap"). The Fifth Circuit summarized the affidavit's description of the controlled buys as follows:

> January 4: The DEA and [St. John Parish Sheriff's Office (SJPSO)] officials witnessed the informant contact Jones at his phone number, Telephone #1, to arrange meetings to purchase crack cocaine. The informant met with Jones at Jones's Reserve, Louisiana home and purchased 12 grams of crack cocaine. According to the informant, he witnessed Jones initially meet Kendrick in the front of Jones's home to purchase crack cocaine before subsequently selling the narcotics to the informant.
>
> February 17: The DEA and SJPSO again observed the informant contact Jones (via Telephone #1) to arrange a meeting to purchase a half-ounce of crack cocaine from Jones. Once the informant and Jones agreed to meet, the DEA and SJPSO surveillance units followed the informant as he or she traveled to Jones's home wearing a recording device. After the informant arrived at Jones's residence, the DEA and SJPSO observed Jones walk to the next-door neighbor's home to meet with an unknown individual, who was later identified as Kendrick. After meeting with Kendrick, Jones returned to his residence to complete his transaction with the informant that was for approximately 12 grams of crack cocaine.[2]

---

[1] United States v. Kendrick, 980 F.3d 432, 435–37 (5th Cir. 2020), *cert. denied,* 141 S. Ct. 2866 (2021).

[2] *Id.*

The Fifth Circuit summarized the communications included in the wiretap application that were intercepted on the Jones Wiretap as follows:

> May 12: The DEA agents intercepted an incoming 4:07 p.m. call from an unidentified woman calling Jones. The unidentified woman asked for "a dime," and Jones confirmed that he was in possession of one. A minute later (4:08 p.m.), Jones sent a text message to a number associated with Telephone #2, which the authorities determined was Kendrick's telephone number. Jones's text message asked Kendrick where he was located, and Kendrick responded: "leaving Home Depot."
>
> May 17: The DEA agents intercepted an incoming 9:32 a.m. call from another woman calling Jones. During the call, Jones described a recent situation where he "flushed everything [he] had last night" because he was supposedly concerned about law enforcement surrounding his home. The caller then inquired as to whether Jones "re-up['ed]," and Jones stated that he was "waiting on my [sic] to come through right now." Five minutes after the call ended (9:37 a.m.), the agents intercepted an outgoing call from Jones to Telephone #2, where Kendrick picked up and greeted Jones. Jones replied that he "need[ed] [Kendrick] til tomorrow man" to which Kendrick stated, "I got you." Jones subsequently sent an outgoing 3:31 p.m. text message to the number that called him at 9:32 a.m., stating "I'm back gud."
>
> May 20: Jones sent an outgoing 5:00 p.m. text message to Telephone #2, stating "Bring me 1." At 5:48 p.m., Kendrick (using Telephone #2) called Jones, asking Jones where Jones was currently located. Jones informed Kendrick that he was "in the truck with Tree [and that he was] coming to get that [in a] little bit, man." Kendrick told Jones that he was at a Valero gas station and Jones confirmed that he was "about to be coming to get that."[3]

Mr. Glass's Motion to Suppress focused primarily on a misstatement in the application regarding the January 4 buy. At some point before detectives sought a wiretap on Defendant's phone, it was revealed that the confidential informant had incorrectly identified Defendant as the supplier in the January

---

[3] *Id.*

3

4 buy, when in fact it was his co-Defendant Travis Carter. Despite this revelation, the misstatement was still included in the wiretap application for Defendant's phone. Mr. Glass argued that the inclusion of this misstatement by Agent Arseneaux in the affidavit undermined his credibility and called into question his interpretations of the other evidence. Specifically, he took issue with Agent Arseneaux's inference that Defendant was the supplier in the February 17 buy when no one identified the man that Jones met at Defendant's house during the buy and the only reference to Defendant was by the informant—not Jones. Next, Mr. Glass took issue with Agent Arseneaux's interpretations of the conversations between Jones and Defendant on Jones's wiretap. He argued that the conversations included in the warrant application were innocuous on their face and that Agent Arseneaux's interpretation of those conversations was unwarranted. The Court held oral argument on the Motion and held that the January 4 misstatement was not deliberate or made with reckless disregard for the truth, and further, even if it did not consider the January 4 buy, the facts that remained in the application still supported probable cause.[4] The Fifth Circuit affirmed this holding on appeal.[5]

Defendant now argues that Mr. Glass was ineffective in failing to fully investigate all of the communications intercepted by the Jones Wiretap prior to litigating the motion to suppress. The Government opposes.

## **LEGAL STANDARD**

28 U.S.C. § 2255(a) provides a prisoner with four grounds upon which he may seek relief from his sentence: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court

---

[4] Doc 373.
[5] United States v. Kendrick, 980 F.3d 432, 435–37 (5th Cir. 2020), cert. denied, 210 L. Ed. 2d 968, 141 S. Ct. 2866 (2021).

4

was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack."[6] Generally, a claim not raised on direct appeal may not be raised on collateral review "unless the petitioner shows cause and prejudice" or actual innocence.[7] The Supreme Court has held, however, that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought" in a § 2255 proceeding.[8]

A district court may deny a 28 U.S.C. § 2255 motion without conducting any type of evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[9] "In those cases, however, where the record does not conclusively negate a prisoner's entitlement to relief, contested fact issues may not be decided on affidavits alone."[10]

## LAW AND ANALYSIS

Defendant alleges that his trial counsel was constitutionally deficient in his handling of the Motion to Suppress. "The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding."[11] Nevertheless, "the right to counsel does not guarantee error-free counsel."[12] The Supreme Court in *Strickland v. Washington* established a two-part test to determine when a defendant's right to effective assistance of counsel has been

---

[6] 28 U.S.C. § 2255(a).
[7] Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 622 (1998).
[8] *Massaro*, 538 U.S. at 509; *see also, e.g.*, United States v. Johnson, 124 F. App'x 914, 915 (5th Cir. 2005).
[9] *See* 28 U.S.C. § 2255
[10] United States v. Arguellas, 78 F. App'x 984, 986–87 (5th Cir. 2003).
[11] Lafler v. Cooper, 566 U.S. 156, 162 (2012).
[12] United States v. Freeman, 818 F.3d 175, 178 (5th Cir. 2016).

violated.[13] "To demonstrate that counsel was constitutionally ineffective, a defendant must show that [1] counsel's representation 'fell below an objective standard of reasonableness' *and* [2] that he was prejudiced as a result."[14]

"When evaluating the first *Strickland* criterion, [the Court] 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[15] Courts "must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"[16] Overall, "judicial scrutiny of counsel's performance must be highly deferential."[17] "To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[18] "A failure to establish either deficient performance or resulting prejudice defeats the [defendant's] claim."[19]

Defendant argues that his trial counsel, Bob Glass, was ineffective for failing to investigate all of the available evidence prior to filing and arguing the Motion to Suppress. Specifically, Defendant contends that Mr. Glass should have reviewed all of the communications intercepted on the Jones Wiretap. Mr. Glass admits by affidavit that there was no strategic reason for his failure to review all of these intercepted communications. Defendant contends that if Mr. Glass had reviewed all of these communications he would

---

[13] Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984).
[14] Lee v. United States, 137 S. Ct. 1958, 1964 (2017) (quoting *Strickland*, 466 U.S. at 688) (emphasis added).
[15] United States v. Fields, 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).
[16] *Id.* at 294 (quoting *Strickland*, 466 U.S. at 689).
[17] *Id.* (quoting *Strickland*, 466 U.S. at 689).
[18] *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694).
[19] United States v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 697).

have found additional grounds for suppression of the evidence generated as a result of the wiretap on Defendant's phone.

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[20] "In an ineffective assistance of counsel claim based on a failure to investigate, a habeas petitioner 'must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"[21]

Defendant's Motion goes through the communications intercepted on the Jones Wiretap in detail. Defendant's revelations can be summarized as follows:

1. Prior to the May 12 communication included in the affidavit, Jones and Defendant talked on the phone and made plans to meet up later that day. Further, throughout the day on May 12, Jones engaged in social conversations contemporaneously with drug sale negotiations. Defendant argues that this suggests that the May 12 texts between him and Jones were social in nature and that Arseneaux's interpretation otherwise was unwarranted.

2. Around the same time that the May 12 communication included in the affidavit took place, Jones had explicitly drug-related conversations with several known sources of supply. For example, around 7:00 p.m., Jones texted three different individuals looking for Adderall. Defendant argues that this suggests that there were many other possible sources for the "dime."

---

[20] *Strickland*, 466 U.S. at 690–91.
[21] Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011). United States v. Barrandey, 2015 WL 13387868, at *7 (W.D. Tex. May 6, 2015).

3. The affidavit incorrectly described the May 17 call as being made by Jones to Defendant, when in fact the call was made by Defendant to Jones. Further, the call went on for several minutes during which Defendant and Jones discussed several friendly, social topics. Defendant argues that omitting this information misrepresented the substance of the call.

4. Between his May 17 call with Defendant and the text to his buyer that he was "back gud," Jones talked to three other known drug associates and made plans to meet up with one. Defendant argues that this suggests that there were several other possible sources of supply and that Arseneaux's omission of this information was misleading.

5. Arseneaux erroneously attributed the May 20 statement that he was "at the Valero" to Defendant, while the audio reveals that it was Jones who stated that he was at the gas station. Further, the affidavit erroneously states that Jones said he was "coming to get that little bit" when the audio reveals that he stated that he would be "coming to get that *in a little bit*." Defendant argues that these misrepresentations demonstrate that Arseneaux was at least reckless in his preparation of the affidavit.

6. On May 20, Jones had numerous explicitly drug-related conversations with several individuals. Defendant argues that these conversations "highlighted the key players in [Jones's] drug network and these omissions show that Kendrick was not one of these players."[22]

7. During the May 20 text conversation between Jones and Defendant that was included in the affidavit, Jones was also having a conversation with co-Defendant Travis Carter in which they were planning to meet up.

---

[22] Doc. 427-1 at 28.

8

> Defendant suggests that the "Bring me 1" text message was intended for Carter.

8. The wiretap application omitted the fact that Jones had daily communications with others planning drug activities and violent crimes, but not with Defendant. Defendant suggests that the type of communication between Defendant and Jones was markedly different from Jones's communications with individuals in his drug network. He argues that the wiretap conversations also revealed that Jones made efforts to insulate Defendant from his drug dealings.

In addition, Defendant's Motion expounds on points made by Mr. Glass, such as the lack of credibility of Arseneaux and the informant and the fact that only the informant identified Defendant in the February 17 buy. In summary, Defendant argues that Arseneaux misconstrued the conversations between Defendant and Jones to make them appear incriminating and that his presentation of the facts was "so rife with plain and obvious errors" that his interpretation of the communications cannot be trusted.[23]

Although Mr. Glass failed to investigate all of the communications intercepted on the Jones Wiretap prior to filing the Motion to Suppress, his Motion made many of the same arguments regarding Agent Arseneaux's interpretations of the calls. As to the May 12 call, he argued that Arseneaux erroneously speculated that the call was drug-related. At oral argument on the Motion to Suppress, he argued, "There are calls that are in the interim that are to other people that are left out. There are texts."[24] As to the May 17 call, he pointed out the seven-hour delay between Jones's call with Defendant and his message to the buyer that he has restocked his supply. He raised the

---

[23] Doc.427-1 at 35.
[24] Doc. 373.

9

possibility that Jones could have met with a different supplier during that timeframe and criticized Arseneaux's interpretation of the call between Jones and Defendant. He argued that "connecting the two is an interpretation. Connecting the two is—relies on the credibility of the agent."[25] He also pointed out the misstatement regarding the January 4 buy and the flimsy evidence regarding the February 17 buy.

Accordingly, this Court cannot say that Mr. Glass's representation fell below an objective standard of reasonableness or that his error was so serious that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[26] It is well settled that the "right to counsel does not guarantee error-free counsel."[27] Mr. Glass filed a Motion to Suppress and set forth several of the arguments espoused by Defendant in his § 2255 Motion. He vigorously and competently argued that Motion at oral argument. "[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy."[28] The fact that Mr. Glass did not include every possible argument in support of his Motion to Suppress does not render his assistance ineffective.[29]

Further, this Court is not convinced that the revelations from the Jones Wiretap would have changed the result of Defendant's Motion to Suppress. Indeed, the Fifth Circuit considered the majority of the facts argued in Defendant's § 2255 Motion and found that the application for the wiretap on

---

[25] Doc. 373.
[26] *Strickland*, 466 U.S. at 687.
[27] United States v. Freeman, 818 F.3d 175, 178 (5th Cir. 2016).
[28] Harrington v. Richter, 562 U.S. 86, 111 (2011).
[29] Defendant also argues that Mr. Glass applied the wrong standard to his Motion to Suppress. The Court finds this argument disingenuous. At oral argument, Mr. Glass mistakenly said the standard was reasonable suspicion, but his briefing and this Court's decision applied the appropriate probable cause standard. Defendant was not prejudiced by Mr. Glass's misstatement.

Defendant's phone still had probable cause. Specifically, the Fifth Circuit held that:

> The remaining unchallenged affidavit content, i.e., the February 17 transaction, the May 12 events, the May 17 exchange and the May 20 text message, along with the insertion of the improperly omitted context of the May 12 and May 17 calls, sets out events that SA Arseneaux believed indicated that trafficking offenses had been committed. These included Jones selling crack cocaine and Kendrick distributing crack cocaine to local dealers like Jones. Indeed, the affidavit's contents undoubtedly confirm that Jones sold drugs to the informant on one occasion where he met with Kendrick amidst completing the drug transaction; and when Jones needed to make local drug sales, he contacted Kendrick about resupplying him and they made efforts to meet. Consequently, we find that the totality of the circumstances supports a probable cause finding. . . . Even if Kendrick had made a sufficient preliminary showing, he still would not have been entitled to relief. This is because, after excising the alleged falsehoods and omissions and inserting the improperly omitted context of the May 12 and 17 calls and texts, the affidavit still included numerous other incriminating facts regarding Kendrick and his involvement with Jones, giving rise to probable cause.[30]

The additional grounds argued by Defendant in this Motion primarily involve the nature and timing of his conversations with others. This new information is not exculpatory and, in this Court's view, is insufficient to alter the Fifth Circuit's finding that the warrant affidavit had probable cause. Indeed, the unchallenged facts in the affidavit identified by the Fifth Circuit remain unchallenged. They are:

- February 17 transaction where the informant identified Kendrick as the supplier that Jones meets with during the drug deal;
- May 12 events in which an unidentified individual contacted Jones for a dime and a minute later, Jones contacted Kendrick to determine his location;

---

[30] *Kendrick*, 980 F.3d at 441–42 (internal quotations omitted).

- May 17 exchange between Jones and Kendrick in which Jones said he needed Kendrick which occurred five minutes after a caller asked Jones if he resupplied his drug inventory; and
- May 20 text message from Jones to Kendrick stating "Bring me 1" followed by them coordinating a meetup location.[31]

Nothing presented by Defendant here has shown these statements to be false. Therefore, even assuming, as Defendant argues, that the Fifth Circuit's finding is not the law of the case, it is, at a minimum, instructive to this Court as to whether further investigation and better argument by Mr. Glass would have altered the outcome of the Motion to Suppress. This Court holds that it would not. Accordingly, Defendant has not shown that his counsel was ineffective in investigating and arguing the Motion to Suppress or that more thorough investigation or better argument would have changed its outcome. Because the records of the case conclusively show that Defendant is not entitled to relief, no evidentiary hearing is warranted.

## CONCLUSION

For the foregoing reasons, Defendant's Petition is DENIED.

New Orleans, Louisiana this 14th day of February, 2023.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[31] *Id.* at 441.